## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| OLAJIDE O. GIWA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  09-cv-1312 |
| | ) |
| COPMEA, AFSCME Local 3464 | ) |
| | ) |
| Defendant. | ) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) and Memorandum in support. (Docs. 8 & 9). Plaintiff filed his timely response in opposition to the Motion (Docs. 11 & 12). For the reasons stated below, the Motion to Dismiss is denied.

### LEGAL STANDARD

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (*citing Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007)). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 547. "The

complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (*quoting Twombly*, 550 U.S. at 557; *Tamayo*, 526 F.3d at 1084). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

On the other hand, "complaints need not anticipate and attempt to plead around defenses." *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (*citing Gomez v. Toledo*, 446 U.S. 635 (1980); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003)). Dismissal on statute of limitations grounds should only be granted where the "plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (*citing Hollander v. Brown*, 457 F.3d 688, 691 fn. 1 (7th Cir. 2006) ("a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense")).

## BACKGROUND

This matter, along with another, simultaneously-filed, case in this District, before Judge Mihm, relates to Plaintiff's employment with the City of Peoria, which was terminated on March 6 or 8, 2008, and his representation by Defendant as a member of AFSCME Local 3464 ("Union"). (Doc. 11 at 1; Case No. 09-1306, Doc. 3

2

at 9).¹ Plaintiff worked for the City for fourteen years, and alleges in the case before Judge Mihm that his supervisor discriminated against him on the basis of his race, national origin, and age between 2004 and 2008. (Case No. 09-1306, Doc. 3 at 9-16).

In an attachment to Plaintiff's form Complaint in this Court, he explains that he believes the Union failed to properly press his grievances against the City because of the Union's animus against his race and national origin. On November 15, 2006, the Union allegedly failed to properly handle the appeal of Plaintiff's three-day disciplinary suspension, including by delaying a hearing on the matter until June 22, 2007 and by failing to call witnesses for the hearing. The Union then settled the dispute by agreeing with the City that the three-day suspension would be removed if Plaintiff had no more disciplinary problems until November 2007. In addition, the Union apparently delayed grieving Plaintiff's March 8, 2008 termination until over a year later, after being contacted by the EEOC following Plaintiff's charge of discrimination. Plaintiff also alleges that, at an unspecified time, the Union failed to "prevent [his] supervisor from violating [his] federal rights and reprimanding [him]," and was "unable to sway [the supervisor's] decision to give [him] a verbal reprimand, written, one day suspension, three days suspension, five days suspension and termination," or to "stop her from violating [his] rights,

---

¹ Plaintiff's Complaint against Defendant relates to its handling of his grievances against the City of Peoria, and does not include the date that the City terminated his employment. As this is a pertinent fact, the Court judicially notices the information provided by Plaintiff in Plaintiff's related case against the City, currently pending before Judge Mihm; in addition, Plaintiff's Response to the Motion to Dismiss alleges that he was terminated on March 6, 2008. Courts may judicially notice documents contained in the public record, including those in the records of other court proceedings. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994). This discrepancy between the dates of termination is immaterial to the Court's determination of the instant motion.

insulting and ridiculing [him] in [the Union representatives'] presence."[2] As evidence for his contention that the Union was motivated by Plaintiff's race and national origin, Plaintiff alleges that the Union president implied that he was somehow less of a United States citizen than others because of his race and national origin, and that his "lesser" citizenship was somehow relevant to a decision made in handling one of his grievances. In addition, he alleges generally that he was treated differently from other Union members because of his race and national origin. (Doc. 4 at 10-11).

On February 2, 2009, Plaintiff filed a charge of discrimination against the Union with the Illinois Department of Human Rights and the EEOC; he alleged race discrimination, national origin discrimination, age discrimination, and retaliation. (Doc. 4 at 13). On June 18, 2009, the EEOC issued a right to sue letter to Plaintiff on this charge.[3] (Doc. 11 at 5). On September 11, 2009, Plaintiff filed

---

[2]   In his Response to the Motion to Dismiss, Plaintiff also states that the Union filed grievances on his behalf with respect to five instances of allegedly wrongful discipline, but complains that "the Union's involvement did not impact the discriminatory behavior of the Plaintiff's employer." (Doc. 11 at 1). The Court notes that the Union is not required to be successful in its representation, but merely to represent its members fairly and without discrimination. *EEOC v. Pipefitters Local 597*, 334 F.3d 656, 661 (7th Cir. 2003) (union has "no affirmative duty to prevent racial harassment or other forms of unlawful discriminatin in the workplace"). The Court is unable to determine on this record whether Plaintiff complains merely that the Union was unsuccessful, or that the Union failed, because of its discriminatory animus, to address Plaintiff's claims of discrimination; the former claim is not a viable cause of action. The resolution of this uncertainty must await summary judgment.

[3]   Though this document was not attached to the Complaint, Plaintiff included it with his Response to the Motion to Dismiss. In this instance, the Court takes judicial notice of the right to sue letter as a public record. *See Ratliff v. Conagra, Inc.*, IP 01-0129-C H/K., 2001 WL 1397298, *2 (S.D. Ind. Oct. 31, 2001); *Robinson v.*

his Complaint against Defendant, along with a Motion to Proceed in forma pauperis in this Court. (Doc. 1). On September 21, 2009, the Court denied Plaintiff's Motion to Proceed in forma pauperis; Plaintiff paid his filing fee on October 27, 2009, and the Complaint was docketed. (Docs. 2 & 4).

## DISCUSSION

Defendant argues in its Motion to Dismiss that Plaintiff's Complaint fails to state a claim upon which relief can be granted, both procedurally and substantively: that it is untimely and that it fails to allege facts stating a claim under Title VII.

### I. Title VII Limitations Period

Defendant argues that Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted, as the claim is untimely under Title VII.[4] (Doc. 9 at 2-4). Defendant cites to two ways in which it alleges that Plaintiff's claims are time-barred: "Plaintiff has not shown that he brought suit within 90 days of his receipt of an EEOC right-to-sue letter," and "all of the alleged acts of discrimination…occurred more than 300 days prior to the filing of his EEOC charge." (Doc. 9 at 2-3).

---

*Honeywell Microswitch Div.*, 98 C 50277, 2001 WL 13257, *5 (N.D. Ill. Jan. 3, 2001) (*citing Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991)).

[4] Defendant also claims that Rule 12(b)(1) is an appropriate vehicle for its Motion to Dismiss, in addition to Rule 12(b)(6) (failure to state a claim), as the Court lacks subject matter jurisdiction over an untimely Title VII claim. On the contrary, a "court has subject-matter jurisdiction even when a charge of discrimination is untimely. An employee's delay in filing a charge gives the employer an affirmative defense, [the Supreme Court has] held; it does not affect the court's jurisdiction." *E.E.O.C. v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 596 (7th Cir. 2009) (*citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)).

5

Defendant's first argument is clearly without merit. A plaintiff has 90 days after receiving a right-to-sue letter from the EEOC in which to file a suit for discrimination. 42 U.S.C. § 2000e-5(f)(1); *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005). As the EEOC issued the right to sue letter on June 18, 2009, Plaintiff's September 11, 2009 filing in this Court was within the requisite 90 days of his receiving the letter.[5]

Defendant's second argument is also unsuccessful. In Illinois, a plaintiff who sues under Title VII must file a charge with the EEOC within 300 days after the alleged discriminatory act, and any discriminatory actions occurring prior to the 300-day limit are time-barred. *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999) (*citing Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995)). There is an exception to this latter rule, though, where the plaintiff shows that the time-barred actions are "related closely enough" to those within the 300 days preceding the charge to constitute a "continuing violation." *Id.* (*citing Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992)).

Here, Plaintiff's EEOC charge was filed on February 2, 2009. In that charge, he alleges that the last act of discrimination by the Union occurred on April 18, 2008, 290 days before February 2, 2009. Defendant acknowledges these dates, but notes that nowhere in his Complaint does Plaintiff allege a discriminatory act by the Union within 300 days of the charge (after April 8, 2008). Instead, Defendant

---

[5] Defendant states that Plaintiff "has not *shown* that he commenced his suit within 90 days," and argues that the Complaint should thus be dismissed. (Doc. 9 at 2-3) (emphasis added). As noted above, however, a complaint need not anticipate and disprove an affirmative defense such as the statute of limitations in order to avoid dismissal. *Cancer Foundation, Inc.*, 559 F.3d at 674-75. Dismissal is only appropriate if the complaint itself shows that the action is untimely.

6

notes that the Complaint alleges a discriminatory failure to properly represent Plaintiff only in 2006 and 2007, which is outside the 300-day window. However, Defendant has misread Plaintiff's Complaint - he clearly alleges that the Union improperly delayed grieving his March 8, 2008 termination until over a year later, after it had been contacted by the EEOC. (Doc. 4 at 10). Plaintiff thus appears to claim that, as of April 18, 2008, he believed that the Union would make no more efforts to grieve his termination, and so alleged in his EEOC charge that this was the date of the last act of discrimination; alternatively, the claim to the EEOC was based on the handling of Plaintiff's other grievances, and that the failure or delay to grieve the termination "grows out of" the earlier failure to represent him.[6] As it appears from the face of the Complaint, drawing all reasonable inferences in Plaintiff's favor, that Plaintiff alleges at least one discriminatory action within the relevant time period, the Court cannot find at this point that the statute of limitations bars Plaintiff's suit.[7]

---

[6] The Court notes that "the scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The Seventh Circuit has noted that "[a]ll claims of discrimination are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id*. at 1111 (*quoting Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985) (internal citations omitted)); *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (plaintiff may pursue allegations not explicitly included in EEOC charge if allegations "fall within the scope of the charges contained in the EEOC complaint"). Plaintiff's charge did not mention a failure to grieve his termination, though it does state that the Union "failed to provide me with appropriate representation when I filed grievances against my employer." (Doc. 11 at 6). As Defendant has not argued that the charge does not encompass the allegedly wrongful failure to or delay in grieving the termination, the Court does not reach this point.

[7] Whether the allegedly discriminatory actions of 2006 and 2007 qualify for treatment under a "continuing violation" theory cannot be determined on the record

The Court acknowledges that considering the Union's delay in grieving Plaintiff's termination could result in unlimited tolling of the statute of limitations in some circumstances, as a failure to grieve a termination will theoretically continue forever, unless the collective bargainin agreement sets some time limit on grievances. However, Defendant has not cited any cases to the Court indicating what sort of action "starts the clock" in a case alleging a Union's failure to timely grieve a termination. *Cf. Smith v. Potter*, 445 F.3d 1000, 1007 fn. 19 (7th Cir. 2006) (*citing Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)) (in a discrimination suit against an employer for wrongful termination, the limitations period begins on effective date of termination, not on conclusion of union grievance process).

## II.    Failure to State a Claim

Defendant also argues that Plaintiff's Complaint substantively fails to state a claim upon which relief can be granted. As noted by Defendant, a plaintiff suing his union under Title VII must show that "(1) the [employer] violated the collective bargaining agreement…; (2) the [union] breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates [discriminatory] animus…motivated the [union]." *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866-67 (7th Cir. 1997) (*citing Johnson v. Artim Transportation System, Inc.*, 826 F.2d 538, 542 (7th Cir. 1987); *Bugg v. International Union of Allied Indus. Workers of Am.*, 674 F.2d 595, 598 n. 5 (7th Cir.

---

available to the Court on a Motion to Dismiss. The Court's disposition of the instant issue does not foreclose Defendant's ability to argue on summary judgment that alleged actions outside the 300-day window are time-barred and not part of a continuing violation.

1982)). Here, Defendant argues that Plaintiff has failed to state a claim as to each of these elements.

Where the plaintiff to a Title VII suit against his union is an Illinois public employee,[8] Illinois' public sector labor law, rather than the federal labor law, applies to the question of whether the union breached its duty of fair representation; states and their subdivisions are not considered "employers" within the terms of federal labor law.[9] *See N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 331-32 (6th Cir. 1987) (*citing* 29 U.S.C. § 152(2)) ("Public employees of the political subdivisions of a state are not governed by the federal labor laws. Therefore, the laws of [the state] define the permissible contours of the relationship between the union and its members."); *Rodriguez v. Ramsey*, 03 C 3930, 2007 WL 141910, *2 n. 2 (N.D. Ill. 2007) ("the Union['s] duties are, in this case, not governed by federal labor law but rather state public sector labor law"); *Porter v. Rohan*, 01 C 6992, 2003 WL 548396, *12 (N.D. Ill. Feb. 25, 2003). Illinois' public sector labor law, unlike federal labor law, requires only that unions avoid "intentional misconduct in representing employees." 5 ILCS 315/10(b)(1); *Murry v. American Federation of State, County and Mun. Employees, Local 1111*, 712 N.E.2d

---

[8] It appears undisputed that, as an employee of the City of Peoria, Plaintiff was a public employee of a political subdivision of the state of Illinois.

[9] This means that Plaintiff may not proceed against the Union on the basis of the federal duty of fair representation. *Bailey v. Johnson*, 90 C 01795, 1990 WL 77508, *2 (N.D. Ill. 1990) (*citing Jackson v. Temple Univ. of Com. Sys. of Higher Ed.*, 721 F.2d 931, 933 (3rd Cir. 1983)) ("An LMRA suit by a public employee against her public employer should be dismissed for lack of subject matter jurisdiction.").

874, 878 (Ill. App. 1999) (Illinois statute does not incorporate standard of *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65 (1991)).

Keeping in mind that the Court must construe Plaintiff's pro se Complaint liberally, and that all reasonable inferences must be drawn in his favor on a Motion to Dismiss, the Court finds that the Complaint should not be dismissed. Defendant argues that Plaintiff has failed to sufficiently allege that the City violated the applicable collective bargaining agreement, and that the Union intentionally and with discriminatory animus failed to properly represent Plaintiff regarding the City's breach of the collective bargaining agreement. The Court notes, first, that in *Swierkiewicz v. Sorema N. A.*, the Supreme Court held that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination." 534 U.S. 506, 508 (2002). *See also Twombly*, 550 U.S. at 547 (*Twombly's* "analysis does not run counter to *Swierkiewicz*. …Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Though the *Swierkiewicz* court was speaking of the prima facie case required for the indirect method of proof of discrimination against an employer, the Court finds no reason that it would not apply to the elements of a Title VII suit against a union, as well.

Under *Swierkiewicz*, Plaintiff need not specifically allege each element that he will eventually be required to prove. In addition, "the court must treat all well-pleaded allegations as true and draw all inferences in favor of" Plaintiff, the non-moving party. *In re marchFIRST Inc.*, 589 F.3d at 904 (7th Cir. 2009). Here, Plaintiff has alleged that the City discriminated against him because of his race,

age, and national origin. The Court reasonably infers that racial, national origin, or age discrimination resulting in unwarranted disciplinary action on the part of the City would be a violation of any collective bargaining agreement, either explicitly or by implication; unjust discipline or termination must be a violation of the collective bargaining agreement. At the Motion to Dismiss stage, where the collective bargaining agreement has not been made a part of the record, the Court cannot determine as a matter of law that the allegations against the City would not constitute a breach of the collective bargaining agreement.

Plaintiff has also alleged that the Union was motivated by discriminatory animus when it failed to adequately represent him in his grievances against the City, specifically alleging that he was treated differently by the Union from Union members of other races and other national origins, and has noted at least one situation where a Union representative seemed to imply that he was not a "real" citizen, perhaps because of his race or his national origin, and that his "lesser" citizenship was somehow relevant to the handling of one of his grievances. These allegations, though thin, are sufficient to allow the Court to draw the reasonable inference at this early stage that the Union was motivated by discriminatory animus regarding Plaintiff's race or national origin.

In addition to being motivated by discriminatory animus, however, the Union's conduct must have had some adverse impact on Plaintiff. It is not enough if the Union merely disliked Plaintiff because of his race or national origin, so long as it treated him fairly. Plaintiff alleges in his Complaint that the Union wrongfully delayed grieving one of his grievances, failed to call certain witnesses to one of his

11

grievance hearings or otherwise properly represent him regarding the grievances,[10] wrongfully delayed grieving his termination until prompted to do so by the EEOC, and then made an unfavorable settlement with the City, all of which could be considered adverse to Plaintiff.[11]  If these actions were indeed motivated by a judgment of the merits of Plaintiff's case or for some other non-discriminatory reason, rather than by intentional discriminatory animus, as seemingly implied by Defendant, then Plaintiff cannot prevail against the Union.  In other words, if the Union treated Plaintiff's grievances the same as it would have treated those of a worker of another race or national origin, Plaintiff has no claim against the Union. However, this type of determination cannot be made at the Motion to Dismiss stage.

Though Plaintiff's Complaint is not a model of clarity, it suffices to inform Defendant of the claims against it - that it discriminatorily failed to represent

---

[10]  Defendant claims that Plaintiff admitted in his Complaint that its decision not to call these "witnesses was based on an assessment of the merits of the grievances" and that Plaintiff "does not allege that any representation actions were made because of discriminatory reasons." (Doc. 9 at 6).  Plaintiff does state in the Complaint that the Union "believed" one of the witnesses and therefore did not call him to testify at the hearing, and that the "Union felt the City could fire me on the spot if the witnesses are invited and Mr. Boucher states that I hit somebody and he has witnessed [it]," which might be interpreted as admissions that the Union's decisions regarding that particular grievance hearing were motivated by an evaluation of the strategic cost of calling the witnesses, rather than discriminatory animus.  However, he also alleges repeatedly that the Union's decisions were made because of discriminatory animus.  Given Plaintiff's pro se status, and the requirement that all inferences be drawn in Plaintiff's favor, the Court must infer at this stage that these statements by Plaintiff indicate what the Union told him as justification for its decision, not what actually motivated the Union.  It may well be that the Union was motivated by a proper strategic consideration, but this cannot be decided on a Motion to Dismiss.

[11]  Again, the Court notes that it has not decided whether it is appropriate to consider Plaintiff's allegations against the Union part of a "continuing violation," or whether only the Union's actions since April 8, 2008 can be considered.

Plaintiff against the City, particularly with respect to his grievances involving the three-day suspension and his termination, by delaying hearings and failing to properly engage in the grievance process.  In addition, it alleges sufficient facts to raise the claim to the level of plausibility - Plaintiff alleges that the disparity in treatment between himself and other workers, along with a comment by at least one Union representative, show the Union's discriminatory animus.  In addition, he alleges specifically that the Union failed to call pertinent witnesses and otherwise fully engage in the grievance process with regard to allegedly meritorious grivances, and that it unjustifiably delayed grieving Plaintiff's allegedly wrongful termination.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 8) is DENIED.  This matter is REFERRED to Magistrate Judge Gorman for further pretrial proceedings.  IT IS SO ORDERED.

Entered this 25th day of June, 2010.

                                                    s/ Joe B. McDade
                                                    JOE BILLY McDADE
                                        United States Senior District Judge